IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DOUGLAS W. BEAN                                                                           PLAINTIFF

v.                                    Civil No. 09-3036

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Douglas Bean, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed his applications for DIB and SSI on October 24, 2006, alleging an amended onset date of March 1, 2008, due to problems with both knees, a torn rotator cuff in his right shoulder, back pain, and depression. (Tr. 88-89, 206, 220-221). Following denials of his application at the initial and reconsideration levels, Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). An administrative hearing was held on July 3, 2008. (Tr. 6-73). Plaintiff was present and represented by counsel.

At this time, plaintiff was 48 years of age and possessed the equivalent of a high school education and two years of military experience. (Tr. 13-14, 424). While in the Navy, Doug was

given culinary training and worked in the galley of a submarine. (Tr. 18). He has past relevant work ("PRW") experience as a cashier, cook, baker, heavy equipment operator, assembler, and sorter. (Tr. 16-17, 22-23, 27, 29, 59-65, 212-219).

On September 26, 2008, the ALJ found that plaintiff's bilateral knee pain status post right anterior cruciate ligament ("ACL") reconstruction, right shoulder injury with possible rotator cuff injury versus subacromial bursitis, degenerative arthritis in the acromioclavicular ("AC") joint, degenerative changes in his lumbar and thoracic spine, and history of post-traumatic stress disorder ("PTSD") and/or depression were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 83-84). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform light work that does not involve reaching overhead with his right extremity; driving; climbing scaffolds, ladders, or ropes; working at unprotected heights or around dangerous equipment/machine; or, more than occasional climbing stairs, stooping, bending, crouching, crawling, kneeling, and balancing. Plaintiff could also engage in only superficial contact with the public and co-workers, incidental to the work he performed. (Tr. 85-86). With the assistance of a vocational expert, the ALJ found plaintiff could still perform work as a poultry deboner/eviscerator and food sorter/grader. (Tr. 90-91).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on April 16, 2009. (Tr. 1-3). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. #7, 8).

## II.     **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

3

### A. The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III. Evidence Presented:

In 1993, plaintiff was working in a factory when a forklift carrying 500 pounds of plastic shifted and struck his right knee. (Tr. 307). The ensuing worker's compensation treatment included a right knee arthroscopic partial meniscectomy. (Tr. 307).

In January 1996, plaintiff injured his left knee in a motor vehicle accident. (Tr. 307-309, 331). An examination on February 1, 1996, at the Northern Wisconsin Bone and Joint Center by Dr. Kevin Tadych determined plaintiff was suffering from an ACL disruption with a probable meniscus tear in the left knee and an internal derangement in the right knee. (Tr. 331-332). He was suspicious of a meniscal tear in the right knee as well. (Tr. 332). An MRI of both knees revealed an extensive medial meniscus tear and ACL tear and joint effusion in the left knee and tears of the anterior posterior horn of the medial meniscus in the right knee. (Tr. 333). Though

4

plaintiff obviously needed surgery on his left knee and an additional one on the right, he was financially unable to undergo the surgery. (Tr. 325-329). Plaintiff continued to work and his knees continued to deteriorate. (Tr. 38). X-rays of his right knee dated July 1996, showed a small calcification adjacent to the medial condyle of the femur within the soft tissues in the area of the medial collateral ligament. (Tr. 335). He followed up in August of 1996 with Dr. Tadych complaining of pain in both knees, but especially the right knee. (Tr. 326, 327). Dr. Tadych diagnosed him with an ACL deficiency with a grade III sprain and a torn menisci. He was of the opinion that with an ACL tear and deficiency with his menisci, he was susceptible to injury and instability. Dr. Tadych opined that plaintiff needed to undergo reconstruction and menisci repair arthroscopically. Further, he stated that plaintiff was disabled due to bilateral knee problems and was unable to work due to his difficulty with ambulation and inability to carry. (Tr. 326). A second MRI of plaintiff's right knee revealed joint effusion, anterior cruciate ligament tear, tears of the anterior and posterior horn of the medial meniscus, and a suspected more subtle tear of the posterior horn of the lateral meniscus. (Tr. 334). However, once again, plaintiff returned to work.

In February 1999, plaintiff underwent anterior cruciate ligament reconstruction of the right knee with Dr. David Simenstad. (Tr. 307-311). X-rays dated January 1999 showed minimal degenerative change in the left knee joint with lateral subluxation of the patella. (Tr. 321).

In early 2003, plaintiff was doing factory work when he strained his lower back by bending down and attempting to lift a box full of plastic parts. (Tr. 36, 284-303). An MRI of his lumbar spine conducted in March 2003 revealed low grade degenerative changes including

5

traction spurring plus some facet degenerative change at several levels and a little degenerative bulging posteriorly at the T11-T12 level that did not cause significant stenosis. (Tr. 303). No frank disk herniation was noted at any level.

Records from Dr. Richard Burnett dated in 2004 indicate that plaintiff called in several times requesting narcotic medications. (Tr. 281-283). On January 13, 2004, Dr. Burnett terminated him due to narcotic abuse. In February, plaintiff wanted to see the doctor, but did not have the money. Therefore, he was advised to contact the Veteran's Administration Clinic in Little Rock. (Tr. 281).

On January 21, 2006, plaintiff injured his right shoulder while he and a co-worker were installing some overhead pipes. (Tr. 32, 304-306, 377, 379, 380, 381, 387, 401-404). His co-worker slipped on the ladder above him, dropping the 25 foot piece of steel pipe on plaintiff's shoulder. (Tr. 33). Initial x-rays showed degenerative change in the acromioclavicular joint, but no fracture or dislocation. (Tr. 404). Plaintiff's pain seemed to improve following a trigger point injection, but it later returned. (Tr. 379, 390). On March 27, 2006, plaintiff was restricted to light duty pending the results of an MRI. The MRI showed a small tear of the rotator cuff at the insertion into the humerus, but retraction was not seen. (Tr. 369, 400). Degenerative change in the acromioclavicular joint was also noted. (Tr. 369).

An examination performed by Dr. Charles Varela on April 25, 2006, revealed a full passive range of motion in plaintiff' right shoulder. (Tr. 304-306, 370-372). He did lack approximately 20 degrees of forward flexion and had tenderness of the anterior acromion and pain to forward elevation. However, no severe rotator cuff weakness was identified. Dr. Varela diagnosed him with a possible rotator cuff injury versus subacromial bursitis and degenerative

6

arthritis of the right AC joint. Arthroscopy was recommended, but it was terminated when Workmen's Compensation denied his claim. (Tr. 33-34). Therefore, plaintiff's treatment consisted of taking non-prescription Tylenol and Advil. (Tr. 38).

On January 15, 2007, plaintiff sought emergency treatment for his shoulder pain. (Tr. 396-397, 395-398). Plaintiff was reportedly under his house working when the pain increased. He stated that he had been receiving Soma and Percocet from Dr. Burnett and also a back specialist in Little Rock. When he reported this to Dr. Burnett's wife, she reportedly kicked him out of the office and he had not been back. Dr. Jennifer Sadler noted that plaintiff had recently been released from jail and was requesting pain medication. She indicated that she had treated plaintiff for these same symptoms two years prior. Dr. Sadler advised plaintiff that his condition was chronic and, if he was not going to undergo surgery, he needed to be getting his pain control through his primary care physician. She agreed to prescribed Ultram and recommended that he follow-up with the Veteran's Administration in Fayetteville. (Tr. 396-397).

On October 13, 2008, plaintiff underwent a neuropsychological evaluation with Dr. Vann Smith. (Tr. 424-427). Dr. Vann Smith opined that plaintiff's medical history was significant for steadily worsening neurocognitive symptoms including impaired recall memory, word finding impairment, affective liability, sleep pattern disturbance and episodic dysexecutivism. (Tr. 424). After administering a series of tests, he concluded that plaintiff's clinical history, mental status examination, and neuropsychodiagnostic screen test profile data revealed a pattern of abnormal responses and pathgnomonic indices consistent with the presence of diffuse organic brain dysfunction of moderate severity. The pattern of abnormal findings noted across the plaintiff's neuropsychodiagnostic test profile was said to be similar to that seen commonly in

association with: the dysregulation of key central neurochemistry (serotonin, norepinephrine, acetylcholine, GABA) believed now to be precipitated by the brain and spinal cords adaptive responses to chronically painful disease processes. These data were, to a significant degree of scientific certainty, consistent with plaintiff's reported clinical history. Resulting neurocognitive symptoms were found to interfere with plaintiff's capacity to carry out routine daily activities in a consistent manner. In Dr. Smith's opinion, this rendered plaintiff disabled at that time. He then diagnosed plaintiff with cognitive dysfunction. (Tr. 427).

Dr. Smith also completed a mental RFC assessment. (Tr. 428-432). He determined that plaintiff was unable to meet competitive standards in remembering work-like procedures, maintaining attention for two hour segments, maintaining regular attendance and punctuality within customary, usually strict tolerances, sustaining an ordinary routine without special supervision, completing a normal workday or workweek without disruption from psychologically based symptoms, and in performing at a consistent pace without an unreasonable number and length of rest periods. (Tr. 430). Dr. Smith also found that with regard to the same abilities needed for skilled or semiskilled work, plaintiff was unable to meet competitive standards in understanding and remembering detailed instructions, carrying out detailed instructions, setting realistic goals or making plans independently of others, and in dealing with the stress of skilled and semiskilled work. Dr. Smith also noted that plaintiff would likely miss more than four days of work per month and had a GAF at that time of just 40. (Tr. 428, 431).

## IV.   Discussion:

Plaintiff contends that the ALJ erred by failing to find plaintiff's subjective complaints to be credible, failing to evaluate plaintiff's impairments in combination, failing to properly weigh Dr. Tadych's opinion, and concluding that plaintiff was not disabled. He also alleges error on the part of the Appeals Council for their failure to remand the case upon receipt of Dr. Smith's evaluation.

### A.   Subjective Complaints:

When evaluating the credibility of plaintiff's subjective complaints the ALJ is required to make an express credibility determination detailing her reasons for discrediting the testimony. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). The standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents her from performing any kind of work). An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly

discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

### 1.     **Physical Impairments:**

It is clear to the undersigned that the ALJ properly considered plaintiff's subjective complaints, individually and in combination, prior to determining that plaintiff's complaints were not totally credible. Although outside the relevant time period, the record reveals that plaintiff sustained an extensive medial meniscus tear and an ACL tear to the left knee in 1996, as well as an anterior cruciate ligament tear, tears of the anterior and posterior horn of the medial meniscus, and a suspected more subtle tear of the posterior horn of the lateral meniscus. (Tr. 334). At this time, Dr. Tadych opined that plaintiff was disabled due to bilateral knee problems and was unable to work due to his difficulty with ambulation and inability to carry. (Tr. 326). *See Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998) (evidence concerning ailments outside the relevant time period can support or elucidate the severity of a condition; however, such evidence cannot serve as the only support for disability). Subsequently, in 1999, plaintiff underwent surgery on his right knee, but stated that he did not have the money to have the left knee surgically repaired. X-rays of his left knee, dated just before surgery on his right knee, revealed only minimal degenerative change in the left knee joint with lateral subluxation of the patella. (Tr. 321). However, we can find no evidence to show that plaintiff sought treatment for

his knees after his surgery in February 1999. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). We also note that plaintiff returned to work, albeit if off and on, for at least 9 years after Dr. Tadych issued his opinion. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (plaintiff worked for years with his impairments). And, at the time of the hearing, plaintiff testified to taking only over-the-counter medications for pain relief. 20 C.F.R. § 404.1529(3)(iv); *see also Rankin v. Apfel*, 195 F.3d 427, 430 (8th Cir. 1999) (holding that taking over-the-counter pain medication distracts from the plaintiff's claim of disability). As such, we agree with the ALJ's determination that Dr. Tadych's opinion was not entitled to substantial weight.

Plaintiff was also treated for a back injury in 2003. Testing revealed low grade degenerative changes including traction spurring plus some facet degenerative change at several levels and a little degenerative bulging posteriorly at the T11-T12 level that did not cause significant stenosis. (Tr. 303). Records do indicate that plaintiff was prescribed narcotic medications for pain relief, however, he began abusing them and was subsequently discharged from his treating doctor's care. He also returned to work after sustaining this injury and failed to seek consistent treatment for his back pain. *Edwards v. Barnhart*, 314 F.3d at 967.

In 2006, still outside the relevant time period, plaintiff sustained an injury to his right shoulder. An MRI revealed a small tear of the rotator cuff at the insertion into the humerus and degenerative change in the acromioclavicular joint. (Tr. 369, 400). Although no severe rotator cuff weakness was identified, some range of motion limitations were noted. Dr. Varela diagnosed him with a possible rotator cuff injury versus subacromial bursitis and degenerative

11

arthritis of the right AC joint and recommended surgery. However, Worker's Compensation denied his claim and plaintiff was never able to obtain surgery. Aside from seeking emergency room treatment for shoulder pain in 2007, plaintiff sought no further treatment for his alleged disabling impairment. *See Edwards*, 314 F.3d at 967. And, once again, he took only over-the-counter pain medications. *See Rankin*, 195 F.3d at 430.

We note plaintiff's contention that he did not seek more consistent treatment or follow-up with surgery because he could not afford to do so. However, plaintiff was a Veteran and, as such, he was entitled to benefits through the VA. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan,* 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not *ipso facto* preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted). Plaintiff was advised to seek treatment from the VA on at least two occasions. He now seeks to excuse his failure to seek VA treatment on the basis of a prior bad experience with them. Given the fact that the VA treatment would have been at little or no cost to him and the fact that financial hardship is his excuse for failing to obtain outside treatment, we do not find plaintiff's failure to seek consistent medical treatment should be excused.

### 2.   **Mental Impairments:**

Plaintiff also contends that he suffers from a disabling level of cognitive dysfunction, PTSD, and depression. The only evidence he has submitted in support for this proposition is the evaluation of Dr. Vann Smith who examined plaintiff on only one occasion after the ALJ

12

rendered his decision in this matter. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). Plaintiff submitted Dr. Smith's evaluation to the Appeals Council, who in turn denied review. However, we do not evaluate the Appeals Council's decision to deny review. Instead, our role is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made. *See, e.g., Nelson,* 966 F.2d at 366, and *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir.1992).

While we do note Dr. Smith's findings, we do not find support for them in the overall record. We can find no evidence to show that plaintiff complained of or was ever diagnosed with cognitive dysfunction during the relevant time period. The evidence indicates that he continued to work, off and on, until 2008 voicing no complaints of cognitive problems. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Plaintiff testified that his knees and shoulder were the two main causes of his disability. Further, although plaintiff argues that this chronic pain has resulted in brain atrophy and cognitive dysfunction, no CT scans or MRIs were ever performed to verify plaintiff's claim. *Id*. In fact, there is no suggestion in the record by any of plaintiff's doctors to indicate that plaintiff cognitive functioning was anything but normal. Therefore, we do not believe that Dr. Smith's assessment would have impacted the ALJ's decision.

Dr. Smith also appears to have accepted plaintiff's subjective complaints of disabling pain and utilized them in his assessment. As such, we do not find that Dr. Smith's opinion would have been entitled to significant weight. *See Hamilton v. Astrue*, 518 F.3d 607, 610 (8th

13

Cir. 2008) (treating physician's opinion does not deserve controlling weight when it is merely conclusory statement and not supported by medically acceptable diagnostic techniques).

Likewise, plaintiff was never treated by a mental health professional, diagnosed with PTSD or depression, or prescribed any psychotropic medications. *See Forte*, 377 F.3d at 895 Dr. Smith's mental RFC assessment is the only evidence of record to suggest that plaintiff suffered from any mental limitations whatsoever. Therefore, although it is clear that plaintiff's pain likely contributed to some level of depression, we can not say the ALJ erred in determining that plaintiff's mental impairment was not as severe as alleged.

### 3. **Activities:**

Plaintiff's reported activities also contradict his claim of disability. He reported the ability to care for his personal hygiene, take care of pets, cook dinner, do light dusting, do laundry, make the bed, play board games and video games with his fiancé's son, watch television, read, complete surveys on the computer, help with the yard maintenance tasks, walk, ride in a car, shop in stores for food and clothing, count change, and spend time with his family. (Tr. 46- 50, 223-226, 268). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

14

### 4. Testimony:

Plaintiff's fiancé, Florissa Armstrong, testified on his behalf. (Tr. 51-55). Although she initially stated that he did nothing productive during the day, she later admitted that he did prepare dinner, occasionally did laundry, and performed some yard work with her assistance. Ms. Armstrong indicated that plaintiff had told her he had problems with pain and she believed this due to the fact that he walked and carried himself "all bent over." As for depression, Ms. Armstrong opined that plaintiff had "something." She did note that he woke up in the middle of the night due to nightmares, but could not say whether he slept during the day or not, as she worked and was not home with him. (Tr. 51-55). We find that he ALJ properly considered Ms. Armstrong's testimony, but found it to be unpersuasive, as it is not supported by the overall record. This determination was well within the ALJ's province. *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, we find that the ALJ properly determined that plaintiff's daily activities were inconsistent with his subjective complaints of disabling impairment. His subjective complaints were also inconsistent with the medical evidence.

### B. The ALJ's RFC Assessment:

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."

15

*Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The ALJ considered plaintiff's subjective complaints, his medical records, and the RFC assessment of a non-examining doctor before determining his RFC. On February 17, 2007, Dr. Jim Takach reviewed plaintiff's medical records and completed an RFC assessment. (Tr. 407-414). He concluded that plaintiff could perform light work requiring limited reaching in all directions. (Tr. 407-414).

We are cognizant of plaintiff's history of bilateral knee, back, and right shoulder pain, but also note that he failed to seek consistent treatment for these alleged impairments. Dr. Tadych did state that plaintiff was disabled in 1996 due to bilateral knee problems and difficulty with ambulation. This was, however, approximately 12 years before plaintiff's alleged onset date, and plaintiff returned to work for many years, in spite of Dr. Tadych's assessment. We believe this shows that plaintiff's knee problems were not disabling.

In April 2006, Dr. Valera opined that plaintiff could return to work restricted only to no overhead activities and no lifting greater than approximately 20 pounds with his right arm. (Tr.

371). Again, plaintiff returned to work and performed substantial gainful activity in 2006 and 2007.

We can also find no evidence to support plaintiff's allegation of disability due to mental limitations. Plaintiff was never treated by a mental health professional, diagnosed with PTSD or depression, or prescribed any psychotropic medications. While plaintiff did submit additional medical evidence to the Appeals Council in the form of Dr. Smith's neurocognitive assessment, given the lack of evidence in the record to support a diagnosis of cognitive dysfunction, we do not believe this evidence would have any impact on the ALJ's RFC assessment.

Accordingly, we find that substantial evidence supports the ALJ's determination that plaintiff could perform light work that does not involve reaching overhead with his right extremity; driving; climbing scaffolds, ladders, or ropes; working at unprotected heights or around dangerous equipment/machine; more than occasional climbing stairs, stooping, bending, crouching, crawling, kneeling, and balancing; or, more than superficial contact with the public and co-workers, incidental to the work he performs. (Tr. 85-86).

### C. **Vocational Expert's Testimony:**

Testimony from a vocational expert based on a properly-phrased hypothetical question constitutes substantial evidence. *See Cruze v. Chater,* 85 F.3d 1320, 1323 (8th Cir.1996); *cf. Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir.1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision). The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Id.* (citing

17

*Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir.1993)); *see also Morse v. Shalala,* 32 F.3d 1228, 1230 (8th Cir.1994).

In the present case, the vocational expert testified that a person of plaintiff's age, education, and past experience, who could perform light work with the limitations enumerated by the ALJ, could return to plaintiff's PRW as a short order cook and an electrical assembler. (Tr. 66-67). However, because plaintiff's memory was not precise as to how long he performed these positions, making it difficult for the ALJ to determine whether they actually constituted PRW or not, she decided these positions did not constitute PRW. The VE then testified that plaintiff could perform other work as a poultry deboner or eviscerator and a food sorter or grader. (Tr. 67-70). Clearly, the hypothetical posed to the expert encompasses all of the impairments that the ALJ found were substantially supported by the record as a whole.

**V.     Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 17th day of June 2010.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE